## TIBBETTS *vs.* TOWLE & *al.*

A. sold a yoke of oxen to B. for a stipulated price, to be paid at a future day, *A. to hold the oxen till paid for*.   A. permitted them to pass into the possession of B., who sold them to C., and the latter to D., for good consideration and without notice of A's lien.   *Held,* that the lien was not thereby defeated, but that A. could maintain trover against D. for the conversion of the cattle ; and that, without waiting the expiration of the term of credit.

THIS was *trover* for a yoke of oxen, and was submitted for the decision of the Court upon certain agreed facts, which are stated in the opinion of the Court.    A nonsuit or default was to be entered, according to the opinion of the Court.

*Rogers*, for the plaintiff, cited *Woodruff* v. *Halsey* & *al.*, 8 *Pick*. 333 ; *Brooks* v. *Powers*, 15 *Mass*. 244 ; *Badlam* v.

*Tucker,* 1 *Pick.* 389 ; *Haskell & als.* v. *Greely,* 3 *Geenl.* 425 ; *Smith* v. *Dennie* 6 *Pick.* 262 ; *Sawyer* v. *Shaw, & als.* 9 *Greenl.* 47 ; *Lunt* v. *Whitaker,* 1 *Fairf.* 310.

*J. Appleton,* for the defendants. The words in the contract merely describe a lien which the law itself prescribes, and confer no greater rights than would have existed without the written contract. And although in a sale of this kind, the vendor has a lien for the price while the property remains in his hands, yet it is otherwise when he permits the property to pass out of his possession. *Yelv.* 67 ; 6 *Chan. Cas.* 437 ; *Chapman & al.* v. *Searle,* 3 *Pick.* 38 ; *Parks* v. *Hall,* 2 *Pick.* 206 ; 1 *Hall's Rep.* 155 ; *Gallop* v. *Newman & al.* 7 *Pick.* 283.

He argued from the terms of the contract, and from the circumstances in the case, that it must have been understood by the parties, that the property should go into the hands of *Norton,* and remain until a forfeiture of the condition occurred by nonpayment of the price ; in which case, the action, it was insisted, was prematurely brought. *Wheeler* v. *Train,* 3 *Pick.* 258 ; *Wyman* v. *Dorr,* 3 *Greenl.* 183.

The law is well settled, that if one obtain goods by false and fraudulent pretences, he acquires no title as against his vendor, though he may pass the property to an innocent and *bona fide* purchaser. 8 *Cowan,* 238 ; 7 *Taunt.* 62 ; 2 *Caines,* 182 ; 5 *T. Rep.* 175 ; *Seaver* v. *Dingley,* 4 *Greenl.* 306. By a much stonger reason should it be so, where there is no fraud, but a conditional sale merely. That no distinction in favor of the former class of cases should obtain, cite *Hussey* v. *Thornton,* 4 *Mass.* 405 ; *Harris* v. *Smith,* 3 *Serg. & Rawle,* 20 ; 2 *Paige's Ch. R.* 769 ; 8 *Cowan,* 238 ; 3 *Caines,* 132 ; 5 *Term R.* 175 ; 2 *Paige R.* 172 ; 1 *Paige R.* 315.

EMERY J. — The case is submitted to us on an admitted state of facts. The plaintiff's title to the yoke of oxen is exhibited in an agreement, dated the 5*th* of *Nov.* 1832, wherein one *Reuben B. Norton,* who signs it, says, " This may certify that I prom-" ise to pay *Mr. James Tibbetts* of *Dexter,* one hundred and " twenty-two dollars and fifty cents, in *June* next, for a pair of " oxen five years old — one red and the other brindle ; likewise a

" black mare eight years old, fifty dollars — and this certifies " that the said *Tibbetts* holds the above cattle and mare till the " above debt is paid, and the interest. The above cattle and " mare are to be paid for in *June* next."

A demand and refusal are admitted, and also that the defendants purchased for a valuable consideration the oxen of one *Henry Robinson,* who had bought the same of said *Reuben B. Norton,* to whom they were delivered *Nov. 5th,* 1832, and in whose possession they remained till the time of his sale to *Robinson,* and had paid a valuable consideration for the same without a knowledge on the part of said *Robinson* or the defendants of the claim of the plaintiff.

This suit was commenced on the 16*th* of *May,* 1833, more than a month previous to the time appointed for the payment of the purchase money.

Before us the parties are by the statement of this case to be considered as fair and honest men.

The defendants' counsel contends, " that this agreement is an ordinary note of hand with a few words added, " *Tibbets* holds," &c., and that the papers indicate that the property sold was to remain with *Norton,* the vendee, till the time of payment elapsed. That therefore, the action is brought prematurely, and with much force and ingenuity maintained, that if the sale be conditional, still, the law applicable to such sales, regards them as fraudulent, provided the rights of *bona fide* purchasers, without notice, come in conflict with the claims of the original seller.

That such purchasers are the defendants, and ought to be protected, because the first seller enabled *Norton* to hold out false colors. But we think the reply of the plaintiff's counsel to these suggestions, carries with it the greater strength of reason, that, " in the case of conditional sale no property passes but sub-" ject to the condition."

It is hardly right to consider this an open question. Priority of title must settle this matter. And upon recurring to authorities of established reputation we shall find that our Court have only studiously and steadily maintained the ancient limits of the law. — In *Shepard's Touchstone,* 118, 119 and 120, we are informed that, " It is a general rule, that when a man hath a thing

" he may condition with it as he will. A contract or sale of a
" chattel personal, as an ox or the like, may be upon condition,
" and the condition doth always attend and wait upon the estate
" or *thing* whereunto it is annexed ; so that although the same
" do pass through the hands of a hundred men, yet it is subject
" to the condition still."

The statement discloses, that the plaintiff's right was asserted
to continue upon the property till the debt and interest should be
paid. Perhaps no better term could be used than that, " he
" holds *the cattle and mare*," *until the payment should be ac-
complished.* The *delivery*, therefore, must have been *made on
that condition.* In the case cited by the defendants' counsel
from 2 *Paige's Ch. Rep.* 172, the *Chancellor* makes it a subject
of particular notice, that the delivery was not conditional nor con-
sidered to be so by either party. There is nothing then to prevent
the plaintiff from resuming the possession at any time, unless
there is distinct and unequivocal proof that he absolutely con-
tracted with *Norton*, that he should have the exclusive posses-
sion of the cattle and mare, till the month of *June* had elapsed,
independent of the plaintiff's right. That proof has not been
communicated.

*Henry Robinson* and the defendants may have dealt incau-
tiously with *Norton*, but they can gain no better title than he
possessed. The sales to them are subject to the original right of
the plaintiff. 1 *John. R.* 471 ; *Wheelwright* v. *Depeyster*.

It is not for the Court to presume any fraudulent design against
either. When the plaintiff found the property passed away to
persons claiming under sales from *Norton*, it was highly proper
that he should require its restoration. He was for preserving his
*hold* upon it according to the stipulation. On the refusal to com-
ply with his request, he was entitled to commence his suit. It is
not prematurely brought. It is only carrying out the principles
of the case of *Emerson* v. *Fisk, et al.* 6 *Greenl.* 200, and *Lunt
et al.* v. *Whitaker*, 1 *Fairf.* 310, to decide as we do, upon the
facts submitted, that the defendants must be defaulted, and judg-
ment be rendered for the plaintiff to recover his damages and
costs.