ZENAS E. BRIGGS v. ADOLPH LEITELT ET AL.

*Chattel mortgage to be filed at mortgager's residence.*

Where the members of a firm have their actual and permanent residence in one place, but transact their business at another where they board for part of the year, but with no intention of changing their domicile, a chattel mortgage given by them should be filed at their permanent place of residence.

Case made from Montcalm. Submitted April 25. Decided June 4.

TROVER by sheriff Briggs for chattels seized and sold by the mortgagees. Plaintiff had judgment below.

*Ellsworth & Sapp* for plaintiff. A chattel mortgage executed by more than one person must be recorded where each resides or it will be void as against creditors, *Rich v. Roberts,* 48 Me., 548: 50 Me., 395; *Morrill v. Sanford,* 49 Me., 566; one can have his domicile at one place and his residence at another, *Hubbardston Lumber Co. v. Covert,* 35 Mich., 254; *Frost v. Dickinson,* 19 Wend., 11; *Love v. Cherry,* 24 Ia., 204; *Supervisors v. Davenport,* 40 Ill., 197; *Wells v. People,* 44 Ill., 40; a chattel mortgage not filed as provided in Comp. L., § 4706 is absolutely void as to creditors even though they know of its existence, *Farmers' L. & T. Co. v. Hendrickson,* 25 Barb., 484; *Porter v. Dement,* 35 Ill., 480; *Benedict v. Smith,* 10 Paige, 126; *Ely v. Carnley,* 19 N. Y., 496; *Sheldon v. Conner,* 48 Me., 584; *Single v. Phelps,* 20 Wis., 398.

*N. J. Smith* and *Jas. A. Rogers* for defendant. An unrecorded mortgage is good as against creditors and subsequent purchasers who have notice of it, although not registered within the prescribed time, *Wyatt v. Stewart,* 34 Ala., 716; *Smith v. Zurcher,* 9 Ala., 208; *Stephenson v. Browning,* 48 Ill., 78; *Gaff v. Harding,* 48 Ill., 148; *Doyle v. Stevens,* 4 Mich., 87.

CAMPBELL, C. J.    This record, which is so full of blunders as to dates that it is difficult to understand just what rights any one has under it, appears to present one or two points in such a way that we can give a reasonably correct guess at what was meant by the referee, although if our conclusions were different from what they are upon the legal propositions argued, we should feel compelled to send the case back for new trial as almost hopelessly muddled.    But this much we can infer.

Briggs as sheriff had seized upon the engine, boilers, shingle machine, saws, gearing and machinery of a steam-mill under attachments purporting to run against Charles L. Storrs, Fred. Storrs and William A. Doherty. The property belonged to the firm of Storrs & Doherty, consisting of Fred. Storrs and William A. Doherty. Who Charles L. Storrs was does not appear.    There is reason to infer there was no such person, but reference is made to one Carlton A. Storrs whose interest is left unexplained.    At the time the attachments were levied defendants held a *bona fide* chattel mortgage, duly filed in Grand Haven, but not filed in the town where the mill was situated until after the earliest attachment. This mortgage was signed by Fred. C. Storrs and Doherty individually, and with the firm name also. The mortgagees took the property and sold it under their mortgage.    The main question is concerning the validity of this mortgage as against a levy, although other questions of some importance were also argued.

The referee seems to have become somewhat confused in metaphysical distinctions between residence and domicile, but the facts are set forth sufficiently to make out this condition of affairs: Doherty who was a married man and Fred. C. Storrs who was a single man whose home was with his father, both lived at Grand Haven, which was their ordinary and permanent place of abode.    In October, 1874, they formed a partnership which continued until November, 1875.    Their chief

business was running the mill referred to in the township of Winfield in Montcalm county. Neither of the partners kept the books at Winfield, but they were kept by a clerk. The shingles were all shipped and sold from another town named Morley in Mecosta county, where they kept no office. Storrs boarded at Winfield from late in November, 1874, till the early spring of the next year, and boarded at the same place most of the time until May, when the mortgage was given. A part of that spring he boarded at Morley, and in the warm weather was away frequently. In the fall he returned to Grand Haven to reside. Doherty kept house in Grand Haven during the whole of the partnership term, visiting Winfield and boarding there nearly a month in February, and boarding at Morley part of the time in the spring, and about three months in the summer and fall. The referee concludes from this state of facts that the domicile of both partners was all the while at Grand Haven, and that at the particular date in May of the chattel mortgage Storrs resided at Winfield and Doherty at Grand Haven, and that in law the firm resided at Winfield.

It is very clear to us that both partners resided at Grand Haven, and that their short business visits to Morley and Winfield did not change it. There was nothing permanent about those visits, and no purpose is found of changing the abiding place of either partner from Grand Haven. The case has no analogy to *Hubbardston Lumber Co. v. Covert*, 35 Mich., 254, where the actual residence of the only partner in Michigan was in the town where the firm business was conducted, and where a part of the property mortgaged was situated. It was distinctly intimated in that case that it would not apply to fix the residence of partners living in Michigan away from its actual place. Here both partners lived in the same place in this State, and to hold that they resided somewhere else, merely because they happened to own a mill in another place, would be a perversion of the

plain language of the statute, which makes their actual residence the proper place to file chattel mortgages.

Without passing on the other questions, which become unimportant, we think the court below erred in giving judgment for plaintiff. It must be reversed and judgment entered for defendants with costs of both courts.

The other Justices concurred.