E. I. DU PONT DE NEMOURS POWDER CO. v. JONES BROS. et al.

(District Court, S. D. Ohio, E. D.   September 10, 1912.)

No. 1,599.

1. SALES (§ 465*)—CONDITIONAL SALES—FILING.

The rule as to the filing of conditional sales in Ohio is the same as that provided for the filing of chattel mortgages by Gen. Code, §§ 8560–8562, 8568, 8569.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

2. PARTNERSHIP (§ 63*)—NATURE OF FIRM—RESIDENCE.

Notwithstanding Gen. Code Ohio, § 11,260, providing that a partnership may be sued in its partnership name, without alleging or proving the names of the individuals constituting the firm, a partnership is not an entity, and cannot have a residence different from that of the partners composing it.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 93; Dec. Dig. § 63.*]

3. PARTNERSHIP (§ 173*)—CONDITIONAL SALES—EXECUTION BY FIRM—EFFECT.

A conditional sale contract made by a partnership in the firm name is the individual act of each of the partners.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 304, 305; Dec. Dig. § 173.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

4. SALES (§ 465*)—CONDITIONAL SALES—PARTNERSHIP—FILING.

Gen. Code Ohio, § 8568, provides that a contract of conditional sale, to be valid against bona fide purchasers and mortgagors, shall be deposited with the county recorder of the county where the person signing the instrument resides at the time of the execution, if a resident of the state. Held that, where a contract of conditional sale was executed by the members of a firm, who resided in different counties, a filing in the county in which one of the partners resided and in which the firm's principal place of business was located was insufficient, without additional filing in the county where the other partner resided.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

5. SALES (§ 465*)—CONDITIONAL SALES—FILING—REMOVAL OF PROPERTY.

Where a contract of conditional sale is properly filed in conformity with the Ohio law, the temporary removal of the property to another state will not defeat the seller's lien or right to enforce the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

6. SALES (§ 451*)—CONDITIONAL SALES—ENFORCEMENT—WHAT LAW GOVERNS.

Where a buyer of certain construction cars under a conditional sale contract temporarily removed them to Indiana, but the seller did not seek any relief under his contract in that state, a federal court sitting in Ohio would not apply the Indiana law in determining the seller's rights as against the buyer's creditors in insolvency proceedings.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

7. SALES (§ 451*)—CONDITIONAL SALES—WHAT LAW GOVERNS.

Defendant purchased certain construction cars for intervener pursuant to a conditional contract of sale, which, with the notes for the price,

was executed in Illinois. The contract recited that defendant was an Ohio partnership. It was verified as required by the Ohio statute, and was imperfectly filed in that state. The parties contemplated that the cars should be removed from place to place as the exigencies of defendant's business required, and that directions for such removal should emanate from defendant's principal office in Ohio, and that when not in use they should be returned there. *Held* that, in proceedings by the seller to recover the property against the buyer's receiver in insolvency proceedings in Ohio, the court would apply the Ohio law, under the rule that the liability of property to be sold under legal process issuing from the courts sitting in the state where the property is located must be determined by the law of such state.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

8. Courts (§ 372*)—Federal Courts—State Court Decisions—Conclusiveness—Chattel Mortgages—Conditional Sales.

There being so much of a local nature entering into conditional sale contracts and chattel mortgages, a federal court will accept the settled law of each state as decisive in respect to any case with reference to such contracts arising therein.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

In Equity. Suit by the E. I. Du Pont de Nemours Powder Company against Frederick R. Jones and Goshorn A. Jones, partners doing business as Jones Bros. On demurrer and plea to intervention of the Western Wheeled Scraper Company. Sustained.

H. B. Arnold, of Columbus, Ohio, for receivers.
Gumble & Gumble, of Columbus, Ohio, for intervener.

SATER, District Judge. This case is submitted on the demurrer and plea of the receivers to the intervening petition and the amendment thereto of the Western Wheeled Scraper Company. The first question for decision is this: Under the Ohio statute, is a conditional sales contract void as against partnership creditors, if executed by a partnership in the firm name and filed by the vendor in the county only in which such partnership has its usual place of business; one of the partners being a resident of such county and the other a resident of another county in such state?

Frederick R. Jones, a resident of Franklin county, and G. A. Jones, a resident of Hamilton county, were, on and prior to September 12, 1910, and ever since have been, partners engaged in business as railroad and general contractors, under the firm name and style of Jones Bros. On that date the partnership and the intervener entered into a conditional sales contract, entitled a "car lease," and signed, "Jones Bros., by G. A. Jones," whereby certain cars, designed for use in construction work, were hired and leased to the Jones Bros. The cars, the title to which was retained by the lessor, were sold and delivered at Aurora, Ill., and shipped to and used in Ohio, until November 12, 1911, and thereafter in Indiana. The Jones Bros. executed and

delivered nine notes for the unpaid purchase money, aggregating $12,776.38, and entitled in the lease the rental for such cars. The lease authorizes the lessor, in case of any default on the part of the lessees, or of the institution of any legal proceedings against them affecting the cars, to declare, on 10 days' notice, all unpaid installments immediately due and payable, and to take immediate and exclusive possession of the rolling stock in question, wherever found, and hold, lease, use, enjoy, and operate the same, and apply the earnings and rentals to the satisfaction of the unpaid installments, or, on like notice, to sell the same at the lessor's option, as an entirety or in lots, at public or private sale, at such place or places as it may elect. In case of full payment of all sums due under the contract, and the further sum of $1, the lessor was bound to convey the cars to the lessee.

The lease, duly verified, was filed November 1, 1911, with the recorder of Franklin county, in which, the intervener alleges, the "partnership resided and had its principal place of business"; but it was not filed with the recorder of Hamilton county. On December 6th, on complainant's bill and application, receivers were appointed by this court for the Jones Bros. as individuals and as a partnership. The receivers returned the cars to Ohio and sold them under an order of court about the time of the filing of the intervening petition. The intervener asks for a delivery of the cars, or for the payment of the above-mentioned notes. Its position, which is controverted by the receivers, is that under the law merchant a partnership is a quasi corporation; that the statute which permits a partnership to sue and be sued in its firm name (section 11,260, Ohio General Code) has constituted it an artificial person, or distinct entity, like a corporation; that as such it has a residence at its usual or principal place of business; and that to maintain the vendor's priority it was not necessary to file the contract elsewhere than in the county in which the partnership had its usual place of doing business.

[1] Were this a proceeding in bankruptcy, the case would be controlled by Re National Cash Register Co., 174 Fed. 579, 98 C. C. A. 425 (C. C. A. 6). The proceeding, however, is purely equitable. In actions of like character, the status of an unfiled conditional sales contract under the Ohio statute was defined in Hamilton v. David C. Beggs Co. (D. C.) 179 Fed. 949, and Cincinnati Equipment Co. v. Degnan, 184 Fed. 834, 107 C. C. A. 158 (C. C. A. 6). If the contract in question was not filed as required by statute, it falls within the rule announced in those cases, and the intervener's position is then that of a general creditor. In the absence of any utterance by the Supreme Court of the state as to the validity of a conditional sales contract as against creditors and subsequent bona fide mortgagees of the vendee, whose status is the same as or akin to that of the one now under consideration, recourse is had, for a determination of the questions here involved, to the Ohio statutes affecting partnerships and chattel mortgages given by them, and to the decisions touching the same rendered by such court and by the courts of other states having similar statutes. The rule as to the filing of the two kinds of instru-

ments is the same, as will be seen by comparing sections 8560, 8561, and 8562 with sections 8568 and 8569, General Code. Section 8568 requires such a contract to be deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and, if not such resident, then with the county recorder of the county in which the property is situated at the time of the execution of the instrument.

[2] Residence cannot be predicated of a partnership. Section 8099 requires every partnership transacting business in the state under a fictitious name or a designation not showing the names of the persons interested as partners therein, to file with the clerk of the court of common pleas of the county in which its principal office or place of business is situated a certificate, to be indexed by him, stating the names in full of all the members of the partnership and their respective places of residence. Section 11,286, relating to the service of summons, provides that it shall be made by delivery of a copy to the defendant personally, or by leaving it at his usual place of residence, or, if the defendant be a partnership, sued by its company name, by leaving a copy at its usual place of doing business, or with any member of such partnership. Service of garnishee process is made in the same manner. Section 11,833. None of the foregoing statutory provisions attribute a residence to a partnership. On the contrary, they clearly draw a distinction between a partnership's usual place of doing business and the residence of a defendant who is a natural person, and this distinction is clearly recognized in Smith v. Hoover, 39 Ohio St. 249, Grady v. Gosline & Barbour, 48 Ohio St. 665, 29 N. E. 768, and Byers v. Schlupe, 51 Ohio St. 300, 38 N. E. 117, 25 L. R. A. 649, and impliedly so in Whitman v. Keith, 18 Ohio St. 134. In the Byers Case, 51 Ohio St. 314, 316, 38 N. E. 121, 25 L. R. A. 649, it is said:

"A partnership is not, in our judgment, a legal entity, having, as such, a domicile or residence separate and distinct from that of the individuals who constitute it. To what extent residence may be affirmed of a partnership as such was considered by the court in Fitzgerald v. Grimmell, 64 Iowa, 261 [20 N. W. 179]. In the dissenting opinion there is much force, and we cite the same with our concurrence: 'Residence * * * in my opinion can be predicated only of a person, natural or artificial. A partnership, as distinguished from the members composing it, is neither. Besides, it appears to me that, in any view, the mere fact that a partnership maintains for the transaction of its business an established agent in a county where neither partner resides cannot constitute the partnership a resident of such county. There is no pretense that an individual would become a resident of a county by merely transacting business therein through an established agent, and I am not able to see that a different rule should be applied to a partnership.' * * * It may perhaps be urged that, although the individual partners composing a firm reside in another state, the partnership is to be deemed resident in a state where it has a 'usual place of doing business.' But the statute, in prescribing the manner of service and return of summons, recognizes both a place of residence and a place of business. And the one is not to be regarded as identical with the other."

The provision in section 11,260 that a partnership formed for the purpose of carrying on a trade or business in Ohio, or holding property therein, may sue or be sued by the usual or ordinary name which

it has assumed, or by which it is known, and that in such case it shall not be necessary to allege or prove the names of its individuals, is procedural in its nature only and does not change the essential feature of a partnership. Gilmore, Part. 117, 118. Some of the state trial courts have broadly announced that the effect of such legislation is to constitute a partnership an artificial person or distinct entity, but in Whitman v. Keith, 18 Ohio St. 143, 144, the section is correctly interpreted thus:

"The remedy provided by the statute which authorizes suits to be brought by and against partners in their firm name is not a substitute for the remedies previously existing, but is in addition thereto. * * * It follows that partnership liabilities may be enforced by action brought under this statute, and pursuant to its provisions, or by suit against the partners by their individual names, as before the statute, at the option of the plaintiff. * * * The purpose of this statute was to give to every partnership of the kind which it describes a status in court as a person—an artificial or ideal person, it is true, but still the status of a person—who is regarded as the owner of the partnership property and rights in action, and is responsible for the partnership debts and liabilities of every kind. To render the administration of justice more convenient and easy, this statute authorizes suits to be brought by and against this ideal person in the name which the partners have seen fit to give it, and authorizes judgments which may be rendered against it to be satisfied by executions to be levied only on the partnership property."

See, also, Byers v. Schlupe, supra; Haskins v. Alcott, 13 Ohio St. 210, 216; Bates on Partnership, § 1059.

The utterances of the English courts are in harmony with the foregoing, as will appear from Re Beauchamp Bros., [1894] 1 Q. B. 1, 7, and Western National Bank of the City of New York v. Perez, [1891] 1 Q. B. 304, 314, in which latter case it is said:

"When a firm name is used, it is only a convenient method for denoting those persons who compose the firm at the time when that name is used, and a plaintiff who sues partners in the name of their firm in truth sues them severally, just as much as if he had set out all their names."

As regards the doctrine of partnership entity, it may be observed that one conception of a partnership, arising out of the agreement on which it is founded, is that it is an aggregation of persons associated together to share its profits and losses, owning its property and liable for its debts. Another conception is that it is an artificial being, a distinct entity, separate in estate, in rights, and in obligations, from the partners who compose it. Re Bertenshaw, 157 Fed. 363, 365, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886, 13 Ann. Cas. 986. The intervener adopts the latter conception, and relies on Curtis v. Hollingshead, 14 N. J. Law, 402, 409, 410, Pooley v. Driver, L. R. 5 Ch. D. 458, and Parsons on Partnership (4th Ed.) § 184, to which may be added the discussion in Bates on Partnership, c. 8, § 170 et seq., and authorities cited in Re Telfer, 184 Fed. 224, 106 C. C. A. 366 (C. C. A. 6). In West v. Valley Bank, 6 Ohio St. 168, 173, a firm is characterized as an ideal mercantile person. This is the mercantile conception of a partnership. Gilmore, Part. 114 et seq. The legal conception, however, is quite different. Gilmore, Part. 117; Bates, Part. § 170. In Byers v. Schlupe, 51 Ohio St. 314, 38 N. E. page 121, 25 L. R. A. 649, the attitude of

a partnership in the eye of the law, as viewed by the Ohio court, is stated thus:

"The members of a partnership do not form a collective whole, distinct from the individuals composing it; nor are they collectively endowed with any capacity of acquiring rights or incurring obligations. The rights and liabilities of a partnership are the rights and liabilities of the partners. 1 Lind. Part. 5. It is not a creation in which the identity of the individual members is merged and lost, in seeking to enforce against them the obligations of the firm."

The doctrine of partnership entity, in the sense that a partnership is an ideal artificial person or being distinct from the individuals composing it, and in which the identity of the individual members is merged and lost, does not obtain in Ohio. Nor does the judicial recognition of the doctrine of partnership entity change the established rule fixing the substantive rights either of the creditors of the partnership or of its individual members. Re Telfer, 184 Fed. 230, 106 C. C. A. 366. The partnership entity, after the enactment of the remedial statute permitting it to sue or be sued in the firm name, remained precisely the same as that prior to its passage, plus the remedial right thereby conferred. Such enactment does not affect the application of the statutory requirement that a chattel mortgage shall be filed with the recorder of the county where the mortgagor resides at the time of its execution. The same rule consequently applies as to the filing of such an instrument in Ohio as in those states in which the common-law rule is in force—the rule that actions affecting partnerships must be brought in the name of or against the individuals composing the same.

[3, 4] A chattel mortgage or conditional sales contract made by a partnership in the firm name is in fact the individual act of each of the partners; the real mortgagor or contracting party being the partners. Bueb v. Geraty, 28 Misc. Rep. 134, 59 N. Y. Supp. 249; Gilmore, Part. 121, 123; Bates, Part. §§ 179, 439: Smith v. Burnett, 3 Ohio Cir. Ct. R. 595; Granger v. Adams, 90 Ind. 87; Jones, Chat. Mortg. § 257; Cobbey, Chat. Mortg. § 575; 6 Cyc. 1085. The chattel mortgages considered in Westlake v. Westlake, 47 Ohio St. 315, 24 N. E. 412, Aultman & Co. v. Guy, 41 Ohio St. 598, and Devine & Thomas v. Taylor, 12 Ohio Cir. Ct. R. 723, were executed in the names of the partners. In each instance the rule was applied that a mortgage, to maintain its priority as against other creditors and subsequent purchasers and mortgagees in good faith, should be filed in each of the townships (the law then requiring such) in which the respective mortgagors resided. In Smith v. Burnett, a persuasive case, in which the same argument was made in vain which is made here, it was held, regarding a chattel mortgage made by a partnership in the firm name, that:

"Although made in the name of the partnership, it is the individual act of each member, and when the statute so specifically provides for the filing in the township where a partner resides who is a resident of the state, we think it should be followed."

Granger v. Adams is like the case at bar in that the mortgage was executed by one partner in behalf of the firm. Elliott, J., in deciding the case, said:

"The fact that the mortgage is executed by a partnership composed of several members does not change the rule. All the partners are mortgagors, and, as the firm can have no place of residence, the residence of the mortgagors must be that of the individuals composing the partnership. In ordinary legal proceedings, the partnership is reached through the individual partners. If an action is brought against partners, process must be served upon each member of the firm; if actions are instituted, it must be in the name of all the members. The act of the partnership is the act of all the members, the firm representing them in the act. * * * It seems clear upon principle that a mortgage of goods executed by a partnership must be recorded in the counties where the partners reside, and so the authorities declare."

The same result was obtained in Bueb v. Geraty, which was decided under a New York statute which to all intents and purposes is the same as that of Ohio. Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, which also arose in New York, was heard on appeal from the decision of Mr. Justice Hunt, 19 Fed. Cas. 852, Fed. Cas. No. 11,220. Mr. Justice Harlan said:

"The question thus presented is within a very narrow compass, and is not free from difficulty. Its solution depends upon the meaning of the word 'reside' employed in the statute. It is to be regretted that we are not guided by some direct controlling adjudication in the courts of New York construing the statute under examination. But no such decision has been brought to our attention. With some hesitation we have reached the conclusion that a chattel mortgage, executed by a firm upon firm property, is void, under the New York statute, as against creditors, subsequent purchasers, and mortgagees in good faith, unless filed in the city or town where the individual members of the firm severally reside. The statute upon its face furnishes persuasive evidence that its framers intended to make a sharp distinction between the place where the property might be at the time of the execution of the mortgage and the place of the mortgagor's residence. If he be a nonresident of the state of New York, the mortgage may be filed in the town or city where the property shall be at the time of the execution of the mortgage. If he be a resident, then his residence, not the actual situs of the property, governs. If these instruments be executed by several resident mortgagors, the statute would seem to require that the mortgage be filed in the towns or cities where the mortgagors at the time respectively reside."

The conclusion reached is that the conditional sales contract here in question, like a mortgage executed in the firm name, should have been filed in both of the counties in which the members of the firm respectively reside. The reasons justifying such a statute as exists in Ohio are well stated in Morrill v. Sanford, 49 Me. 566, De Courcey v. Collins, 21 N. J. Eq. 357, and Bueb v. Geraty.

[5, 6] The intervener further insists that, the property having been removed to the state of Indiana and being there located at the time the receivers were appointed, the law of that state governs. Winchester Wagon Works, etc., Co. v. Carman, 109 Ind. 31, 34, 9 N. E. 707, 58 Am. Rep. 382, is cited to the point that the vendee of property sold as these cars were, cannot, prior to full payment therefor, sell or incumber such property so as to defeat the title of the vendor. The cars were but temporarily in that state. If the contract of sale had been filed in conformity to the Ohio law, the removal of the property to Indiana would not have defeated the vendor's lien or his right to enforce it. Kanaga v. Taylor, 7 Ohio St. 134, 70 Am. Dec. 62; Blystone

v. Burgett, 10 Ind. 28, 68 Am. Dec. 658; Ames Iron Works v. War-
ren, 76 Ind. 512, 40 Am. Rep. 258. But as the intervener did not seize
or attempt to seize the cars in Indiana, and is not seeking relief in that
state, we are not called upon to determine what its rights would have
been, had it proceeded there.

[7] It is also urged that the contract and notes are governed and
that the rights of the parties must be determined by the law of Illinois,
in which the filing of the contract is not required, because the cars
were sold and delivered in that state and the notes for the unpaid pur-
chase price are made payable there. The contract recites that the
vendee is an Ohio partnership. It was verified as required by the Ohio
statute and, in an imperfect way, filed in this state. The vendor en-
deavored to comply with the Ohio law, and appeals to it to establish
the sufficiency of such filing. The parties contemplated that the cars
would be removed from place to place as the exigencies of the ven-
dee's business required, that the directions for their removal and trans-
portation from place to place would originate from the vendee's prin-
cipal office in Ohio, and that, if assembled, they would, when not
in use, be returned there. The contract, whether it be considered with
reference to the statute of Illinois or of Ohio, is valid as between the
parties. In the former state it is valid as against an assignee for the
benefit of creditors. Hooven v. Burdette, 153 Ill. 672, 39 N. E. 1107;
Trust Co. v. Trumbull, 137 Ill. 180, 27 N. E. 24. But as it was
not filed as required by the Ohio statute, its status, in this state, is
the same as if it had not been filed at all, and it is therefore void as
to the vendees' receivers, as it would have been as to their assignee
in insolvency, had one been named. In Cheney v. Maumee Cycle Co.,
64 Ohio St. 215, 60 N. E. 209, it is said:

"The effect of the appointment, and the seizure of the property by the re-
ceiver, was to fasten the claims of the creditors upon it and to give that
officer control over it for the benefit of creditors, and in this respect his re-
lation to it was, for all practical purposes, the same as that which an as-
signee would have had. The property thus sequestered was held by the re-
ceiver as effectually as an assignee could have held it, or as creditors could
have held it by attachment or levy. In no other way than through him could
the rights of creditors be worked out, and, in this aspect of the case, he
represents the creditors rather than the debtor."

It therefore follows, as was held in the Hamilton and the Cin-
cinnati Equipment Company Cases, that the cars were as effectually
seized by this court for the benefit of the vendees' creditors as if taken
by attachment or upon execution. Especially is this true because
citizens of Ohio are creditors of the vendees and are interested in
the outcome of this proceeding.

The liability of property to be sold under legal process issuing from
the courts of the state where it is situated must be determined by
the law there, rather than that of the jurisdiction where the owner
lives. This rule rests on the ground that every state has the right
to regulate the transfer of property within its limits, and that who-
ever sends property to it impliedly submits to the regulations con-
cerning its transfer in force there, although a different rule of trans-
fer prevails in the jurisdiction where he resides. He has no absolute

right to have the transfer of property lawful in such jurisdiction respected in the courts of the state where it is located, and it is only on the principle of comity that such right is ever allowed. When the laws and policy of a foreign state clash and interfere with the rights of citizens in the state where the parties to the contract seek to enforce it, as one or the other must give way, that prevailing where the relief is sought must have the preference. Fuller v. Steiglitz, 27 Ohio St. 355, 364, 22 Am. Rep. 312; Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Green v. Van Buskirk, 7 Wall. (74 U. S.) 139, 19 L. Ed. 109; Parker v. Brown, 85 Fed. 595, 596, 29 C. C. A. 357 (C. C. A. 6); Re Green (D. C.) 134 Fed. 137, 139. The lex fori regulates the nature, effect, and extent of the remedy. Heaton v. Eldridge & Higgins, 56 Ohio St. 87, 97, 98, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737; Harrison v. Baldwin, 5 Ohio Cir. Ct. R. 310, 312; Story, Conflict of Laws, § 556.

Boyer v. Knowlton Co., 85 Ohio St. 104, 97 N. E. 137, 38 L. R. A. (N. S.) 224, is decisive. The contract of conditional sale in that case had not been filed. The vendor, a New York creditor, contested the right of a chattel mortgagee to seize the property, because his chattel mortgage, which had been filed, was not refiled as provided by the Ohio statute. It was argued that the unfiled contract of sale was good in New York and that rules of comity between the states should make it good in Ohio. The syllabus (which in Ohio states the rule of the case) is as follows:

"Written contracts of conditional sale of personal property, situate in Ohio, although made in another state, must be made and verified as provided in section 4155—2, R. S., in order to preserve the title in the vendor, as against subsequent purchasers and mortgagees in good faith and creditors, even if such contracts are in accordance with the law of the state where entered into. The rule of comity between states does not supersede compliance with said section."

The intervener lays stress on Lane v. Roach's Banda Mexicana Co., 78 N. J. Eq. 439, 79 Atl. 365, and Hubbardston Lumber Co. v. Covert, 35 Mich. 254; but these cases are readily distinguishable from the present one. The Covert Case must be read in the light of Briggs v. Leitelt, 41 Mich. 79, 81, 1 N. W. 942, First Nat. Bank v. Weed, 89 Mich. 357, 373, 50 N. W. 864, Kane v. Rice, Fed. Cas. No. 7,609, Gilmore, Part. 116, 117, Bueb v. Geraty, and Jones on Chattel Mortgages, § 259, note. In any event, we are not controlled by the decisions of other states.

[8] There is so much of a local nature entering into conditional sales contracts and chattel mortgages that a federal court will accept the settled law of each state as decisive in respect to any case arising therein. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341; Hamilton v. David C. Beggs Co., supra.

The plea and demurrer are sustained, and the intervening petition and the amendment thereto are dismissed. The intervener may prove its claim as a common creditor.