Charles WEINGARTEN, Trustee in Bankruptcy of D & B Produce, Inc., Respondent-Appellee,

v.

UNIVERSAL C. I. T. CREDIT CORPORATION, Petitioner-Appellant.

No. 296, Docket 27176.

United States Court of Appeals Second Circuit.

Argued April 4, 1962.

Decided May 4, 1962.

James C. Sargent, New York City (Andrew F. Newell, New York City, and Delaney, Kotler & King, Bridgeport, Conn., on the brief), for petitioner-appellant.

Charles Weingarten, Bridgeport, Conn., pro se.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

Two partners, doing business as D & B Produce, bought a truck under a conditional sales contract with Universal C. I. T. Credit Corp. One partner lived in Bridgeport, Conn., the other in New Haven, Conn.; the partnership did business, and its certificate was filed, in Bridgeport. The conditional sales contract was filed in Bridgeport only. Subsequently, the partnership was incorporated and then became bankrupt. The referee in bankruptcy, on the trustee's application, ruled the contract invalid as a lien because not filed in New Haven as well as in Bridgeport. Judge Timbers affirmed and C. I. T., the petitioner for review, appeals.

The applicable statute, Conn.Gen.Stat. Ann. § 42–77 (Rev. 1958), provides that:

"Except as otherwise provided in this chapter, all contracts for the sale of personal property, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, describing the property and all conditions of such sale, and shall be acknowledged before some competent authority and filed within a reasonable time in the town clerk's office in the town where the vendee resides; but the provisions of this section shall not apply to household furniture and appliances, musical instruments, phonographs, phonograph supplies, radios, television sets, combination sets of phonographs, radios or television, bicycles or property exempt from attachment and execution."

The referee held that the "vendee" here was the two partners as joint purchasers; "vendee" is to be read in the plural where necessary, see Conn.Gen.Stat.Ann. § 1–1. And, since under this view the filing was only half done, he ruled the lien invalid. Appellant, however, claims that the "vendee" was the partnership as an entity, and therefore that filing in the partnership's principal place of business satisfied the statute.

Although Connecticut has never ruled directly on the entity as against the aggregate theory of partnership, the great majority of states have abided by the aggregate concept which ruled at common law. X–L Liquors v. Taylor, 17 N.J. 444, 111 A.2d 753 (1955); see United States v. A. & P. Trucking Corp., 358 U.S. 121, 124, 79 S.Ct. 203, 3 L.Ed.2d 165 (1958); Crane, Partnership 9

(1952); Note, 41 Colum.L.Rev. 698 (1941). And even the Uniform Partnership Act, which Connecticut has since adopted, 1961 P.A. 158, Conn.Gen.Stat. Ann. § 34–39 (Supp.1961), is based not on the entity but on the aggregate theory.[1]

 There being no Connecticut authority to the contrary, we must assume that Connecticut would follow the general common-law rule that a partnership purchase is but a joint purchase by the individual partners. In such cases, filing is to be made where each of the joint owners resides. E. I. Du Pont De Nemours Powder Co. v. Jones Bros., 200 F. 638 (S.D.Ohio 1912). No filing having been made in New Haven, the residence of one of the joint vendees, the lien falls against the trustee.

Affirmed.

---

1. See Helvering v. Smith, 90 F.2d 590, 591 (2d Cir. 1937) (L. Hand, J.) :

"The Uniform Partnership Act * * * did not * * * make the firm an independent juristic entity. The Commission did indeed start out to do so, and if Dean Ames had lived, considering his partiality for the mercantile conception of a partnership (Cory on Accounts, 1839), he might have succeeded in impressing that mould upon the act. But after his death, the conference in 1911 after a very full discussion chose to retain the pluralistic notion of the firm, as the English chancellors had painfully worked it out from the bare common-law, which recognized only joint owners and joint obligors * * * [T]he essentials of the old model were preserved. Indeed, many of the supposed innovations were not such * * * [Much] had all been law before, at least in some jurisdictions, as the Commissioners' notes bear witness."